**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DUNKIN' DONUTS FRANCHISED | ) | |
| RESTAURANTS LLC, BASKIN-ROBBINS | ) | |
| FRANCHISED SHOPS, LLC, AND DB REAL | ) | Civ. Action No. 07-0423 |
| ESTATE ASSETS I LLC, | ) | |
| Plaintiffs, | ) | Judge Joy Flowers Conti |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | |
| NILESH MEHTA, | ) | |
| Defendant. | ) | Re: Doc. No. 4 |

**REPORT AND RECOMMENDATION**

I.   RECOMMENDATION

It is respectfully recommended that Plaintiff's Motion for Preliminary Injunction (Doc. 4) be denied.

II.   REPORT

Plaintiffs, Dunkin' Donuts Franchised Restaurants LLC ("Dunkin'"), Baskin-Robbins Franchised Shops, LLC ("Baskin-Robbins"), and DB Real Estate Assets, I LLC ("DB Real Estate Assets"), (collectively "Plaintiffs"), seek a preliminary injunction against Defendant Nilesh Mehta ("Mehta" or "Defendant") prohibiting Defendant from operating his Dunkin' Donuts/Baskin-Robbins franchise, and from using Dunkin' Donuts and Baskin-Robbins confidential information in the operation of an allegedly competitive business. An evidentiary hearing was held on May 16, 2007, at which the following individuals testified: Gary Zullig, Kanan Mehta, and Hitesh Mehta. After thoroughly reviewing the evidence presented and the relevant law, the Court makes the following findings of fact and conclusions of law.

A.    Findings of Fact

1.   Plaintiff Dunkin' is a Delaware limited liability company with its principal place of business in Canton, Massachusetts.  It is engaged, through its affiliates, in the business of franchising independent business persons to operate "Dunkin' Donuts" shops throughout the United States.  Dunkin' franchisees are licensed to use trade names, service marks, and trademarks of Dunkin' and to operate under the Dunkin' system, which involves the production, merchandising, and sale of donuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.  Ver. Compl. ¶ 1, Ans. ¶ 1.

2.   Plaintiff Baskin-Robbins is a California limited liability company with its principal place of business in Canton, Massachusetts.  It is engaged in the business of franchising independent business persons to operate "Baskin-Robbins" shops throughout the United States. Baskin-Robbins franchisees are licensed to use trade names, service marks, and trademarks of Baskin-Robbins and to operate under the Dunkin' System, which involves the production, merchandising, and sale of ice cream, yogurt and frozen novelties utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification. Ver. Compl. ¶ 2, Ans. ¶ 2.

3.   Plaintiff DB Real Estate Assets is a Delaware limited liability company and the successor in interest to Third Dunkin' Donuts Realty, Inc., ("Third Dunkin' Realty") a Massachusetts corporation with its principal place of business at 120 Royall Street, Canton,

Massachusetts.  DB Real Estate Assets I is engaged in the business of leasing properties to

Dunkin' Donuts franchisees to enable Dunkin' to franchise independent business persons to

operate Dunkin' Donuts shops at those locations. Ver. Compl. ¶ 3, Ans. ¶ 3.

      4.   Defendant Nilesh Mehta ("Mehta" and/or "Defendant") is a citizen and

resident of the Commonwealth of Pennsylvania.  ¶ 4.

      5.   On August 22, 2001 Plaintiffs and Mehta entered into a franchise agreement

(the "Satellite Franchise Agreement") to operate a Dunkin' Donut location at 1001 E. Pittsburgh

Street, Greensburg, Pennsylvania 15601 (the "Satellite Location").  Compl. ¶ 9, Ans. ¶ 9;

Transcript of Preliminary Injunction Proceedings, May 16, 2007, page 16, lines 7-12 (hereinafter

"TR page/lines"); Ex.P-4.

      6.   On August 22, 2001 Plaintiffs and Mehta entered into a franchise agreement to

operate a Dunkin' Donut/Baskin-Robbins location at  1295 S. Main Street, Greensburg,

Pennsylvania 15601 (the "Production Facility").  (The Satellite Franchise Agreement and the

"Production Franchise Agreement" are collectively referred to as the "Franchise Agreements.")

Compl. ¶ 10, Ans. ¶ 10; TR 4/10-12; Ex. P-1.

      7.   From approximately August 22, 2001, Mehta was authorized to operate the

Satellite Location and Production Facility, utilizing Dunkin' Donuts' and Baskin-Robbins' trade

names, trademarks, trade dress, proprietary marks, and the Dunkin  Donuts System.  These

marks include the word marks "DUNKIN' DONUTS," and "BASKIN-ROBBINS" registered on

the principal register of the Patent and Trademark Office at serial numbers, 78754864,

76266480, 76266479, 76266487, 762664769, 73528089 and many others.  Ver. Compl. ¶ 11,

Ans. ¶ 11.

8.   The franchise agreement calls for weekly sales reporting, requiring that the franchisee submit sales for the week, running from Sunday through Saturday.  TR 5/15-17.

9.   A percentage of those sales and an advertising fee are then paid to Dunkin' through FAST, an electronic Internet-based sales reporting system, by way of an electronic funds transfer.  TR 5/21-6/4.

10.   In instances such as in this case, where the franchisee has a real estate lease through Dunkin', the base rent is paid every month, the real estate tax is escrowed, and there is also a percentage rent component that is paid through FAST.  The percentage rent due is equal to the amount by which 10 percent of store sales exceeds the franchisee's base rent for that month. TR 6/14-16.

11.   Franchisees use the FAST system to report their sales, and the system, in turn, calculates the various fees due.  TR 5/22-6/2.

12.   FAST will then generate an electronic funds transfer to satisfy those fees.  TR 6/4.

13.   Calculation of the Continuing Franchise Fees, Continuing Advertising Fees and Percentage Rent can be estimated, if the Franchisee does not report sales.  TR 6/18-25.  The fees paid through the FAST system cannot be accurately calculated absent the reporting of sales. TR 14/20-22.

14.   Weekly sales when not reported are estimated in the amount of the last actual weekly sales reported.  TR 14/15-15/7.

15.  Each Franchise Agreement contains a "Non-Waiver" provision, which provides in part "Acceptance by FRANCHISOR of payments due under this Agreement from

4

any other person or entity shall be deemed to be acceptance from such person or entity as an

agent of FRANCHISEE and not as recognition of such person or entity as an assignee of or

successor to FRANCHISEE."  Ex. P-1 and P-4, ¶ 13.0.

      16.  A Notice of Default/Notice to Cure (P-2) was sent by Plaintiffs on February

2, 2007 pertaining to the 1001 E. Pittsburgh Street location (the Satellite location).  TR 5/1.

      17.  This Notice (P-2) requests that the franchisee submit past due amounts and

financial information within ten days.  Specifically, the Notice at P-2 provides as follows:

> This Notice shall serve as ten (10) days prior written notice that
> DDFR/BASKIN and its rental subsidiaries, intends to terminate your franchise for
> your failure to pay Franchise Fees, Advertising Fees, and other miscellaneous
> fees and charges payable pursuant to your Franchise Agreement in the amounts
> listed below.  Since you may have failed to provide DDFR/BASKIN with reports
> of your gross sales, as required by the Franchise Agreement, all, or a portion, of
> the outstanding Franchise Fees and Advertising Fees may have been estimated
> based on your prior sales.
>
>      . . .
>
> You are required to cure these defaults within 10 days by mailing your
> certified check in the amount of $5,393.34 as listed above to Dunkin' Brands
> Incorporated, Attention: Angie Almada, Collection Specialist, 130 Royall Street,
> Canton MA 02021, plus your missing sales reports and the fees due pursuant to
> those sales reports.  Failure to cure within 10 days may result in termination of
> your franchise and additional legal fees.

      18.  In the paragraph immediately following the second quoted paragraph, the

Notice at P-2 states that "[t]his notice shall also serve as prior written notice that

DDFR/BASKIN intends to take appropriate legal action to terminate your lease with

DDFR/BASKIN, if any, and take possession of your leased premises . . .."

      19.  Paragraph 9.1.1 of the Franchise Agreement grants a seven day cure period

for failure of the franchisee to pay amounts when due to the franchisor. P-1 and P-4**.**  Dunkin'

procedure allows for an extension of time to cure when extenuating circumstances exist.  TR 22/13-16.

20.  Situations which give rise to extenuating circumstances warranting extensions include roadway resurfacing and sidewalk installation or repair - events that disrupt the normal flow of traffic and result in a noticeable decrease in the sales of a particular store.  TR 24/14-23.

21.  The health problems of a franchisee or his family may also be factors considered in determining whether or not to grant an extension.  TR 24/24-25.

22.  Between December 2006 and March 2007, the Mehta family was affected by certain serious health issues.  At the end of 2006, Defendant's wife, Kanan Mehta, was diagnosed with chronic bronchitis which resulted in her hospitalization in January 2007.  TR 55/6-21.  In February 2007, Mr. Mehta was called to New Jersey to care for his father who was seriously ill.  TR 56/10-17.

23.  Mrs. Mehta testified that she is a store manager, and reports sales every Saturday, and normally does not have responsibilities for paying the bills.  While her husband was away tending to his father in New Jersey during his father's illness, she was electronically reporting sales and paying bills.  TR 56/10-61/14.

24.  In response to receiving the Notice of Default/Notice to Cure, Mrs. Mehta first called her husband in New Jersey.  He asked her to catch up on the reports for which Mrs. Mehta had fallen behind due to her illness.  Mrs. Mehta had completed this task online by February 8, 2007.  TR 57/5-17.  Mrs. Mehta also called Angie Almada in Dunkin's collections department to inquire how to send in the amounts due.  TR 58/21-23.

6

25.  Mrs. Mehta asked Ms. Almada how to send the money to cover the deficiency reflected in the notice, and also inquired as to whether she needed to contact Dunkin's counsel, Mr. Tractenberg, to discuss the matter further.  TR 58/22-25.

26.  Angie Almada told Mrs. Mehta not to call Mr. Tractenberg, and advised her that there would be no problem if the money was on her desk by Monday morning.  TR 58/24-59/2.

27.  Mrs. Mehta advised Ms. Almada that her husband was out of town due to family illness and that because she was not an authorized signatory on the Dunkin' business account, she would need some time to get the funds together.  TR 62/7-10.

28.  Mrs. Mehta testified that Ms. Almada said "it would be okay," and as long as Mrs. Mehta sent payments in, "there wouldn't be a problem."  TR 62/12-13.

29.  Ms. Almada did not appear to testify at the instant hearing, nor was an affidavit or declaration submitted on her behalf refuting the fact that she issued the extension.

30.  Mrs. Mehta received a letter on February 15, 2007 from Angie Almada, marked as Ex. P-8, advising that an electronic fund transfer had been returned from the bank. TR 61/8-14; P-8.

31.  The letter dated February 15, 2007 called for immediate transfer of $8,441.34 within 24 hours because the electronic funds transfer was drawn on an account with insufficient funds.  Ex. P-8.

32.  Dunkin' currently employs a Citibank office located in Carol Stream, Illinois to transact its banking NT 27/7-9.  Pursuant to Dunkin' protocol, all checks paid to the company should be deposited through the Carol Stream, Illinois office.  TR 27/14-16.  Dunkin' also

transacts some banking at a Citibank office in New Castle, Delaware.  TR 27/10-11.

33.  While Dunkin' may write checks from the Delaware office, deposits of payments made to Dunkin' are not to be made through the Delaware Citibank office.  TR 27/14-15.  In the event a franchisee payment is deposited in the Delaware Citibank office, it is entirely possible that the payment would go unrecorded.  TR 27/17-19.

34.  On March 8, 2007, Defendant Mehta's wife issued Dunkin' a bank check in the amount of $6,000, to cover the amount specified in the Notice of Default/Notice to Cure of $5,393.34.  D-6; TR 30/19; 64/25; 65/1-3.

35.  The check for $6,000 was sent via Federal Express overnight and stamped received by Dunkin' on March 13, 2007.  TR 51/6-19.

36.  Defendant's check for $6000, in payment of the $5,393 due pursuant to Dunkin's February Notice to Cure, was received by Dunkin', but mistakenly deposited through its Delaware Citibank office.  TR 29/1-7.  The Defendant's check was date stamped March 15, 2007. TR 29/9.

37.  On March 9, 2007, Ms. Almada called Mrs. Mehta and told her that the $6,000 that she had sent "was not enough" to cover the percentage rent, the royalty and the EFT fund money.  TR 65/20-24.

38.  Mrs. Mehta told Ms. Almada that she would again need some time to get the remaining money together, and Ms. Almada said she could send it by the following week.  TR 66/1-3.

39.  On March 14, 2007, Defendant Mehta issued Dunkin' another bank check in the amount of $6, 400 in satisfaction of other amounts allegedly due to Dunkin'.  TR 66/6.

40.  Notices of termination for the satellite location were issued on March 20 and March 19.  The March 20th notice was issued because of the receipt of a check after the issuance of the March 19th notice of termination.  TR 15/8-16/4.

41.  Gary Zullig is a Collections Specialist for Dunkin' Brands and a custodian of records of the franchise agreements and of computerized franchisee accounting.  TR 3/14-4/19.

42.  Mr. Zullig testified that Dunkin' has a process for deciding whether to issue a notice of termination of a franchise agreement.  The Collections Department, of which he is a member, builds a consensus with the Operations Department and the Legal Department whether a notice of termination should be sent. Under the normal process, the decision to issue a notice of termination must be reviewed and approved by the collector, the collections department, the field operations and the legal department.  TR 17/16-18/10.

43.  This consensus process occurs for every notice of termination and occurred in this instance.  TR 17/16-18/22.

44.  Angie Almada was the collector who made the decision to issue the notice of termination.  TR 17/1-14.  Mr. Zullig testified, however, that he did not ask Ms. Almada before she left for maternity leave whether she granted an extension of time to Defendant.  TR 52/10-53/6.

45.  Ex. P-4 is the Franchise Agreement for the producing location dated August 22, 2007 signed by Dunkin' and Defendant Mehta.  TR 16/5-21.

46.  Paragraph 9.0.4 of Ex. P-4 states, "FRANCHISEE shall be in default of this Agreement:…If any other franchise agreement between FRANCHISEE AND FRANCHISOR or any affiliated entity is terminated by reason of FRANCHISEE'S default thereunder. …"  Ex. P-

9

4.

47.  On March 22, 2007, Dunkin' issued a notice of termination for the Pittsburgh Street store, pc 303667.  TR 16/24-18/22.

48.  On the date of the hearing, May 16, 2007, there were still amounts owing from both locations in an amount just over $11,000.  TR 20/12-21/10.

49.  Mr. Zullig relied on Account Receivable Status Reports as part of the electronic  record keeping of Dunkin' Brands to determine the sales reported and amounts paid. The franchisee reports sales electronically and is supposed to pay the amounts due based on the sales reported electronically through electronic fund transfer.  The reports, marked as Ex. 6, identify estimates of unreported sales and unpaid balances or delinquencies.  TR 10/3-13/17; Ex. P-6.

50.  Each Franchise Agreement states: "If FRANCHISEE fails to cure any default within the applicable period following notice from FRANCHISOR, FRANCHISOR may, in addition to all other remedies…immediately terminate this Agreement.  Such termination shall be effective immediately upon receipt of a written notice of termination from FRANCHISOR. Notwithstanding the forgoing, this Agreement shall immediately terminate upon the occurrence of any event set forth in paragraphs 9.0.1 through 9.0.4 … without notice or opportunity to cure or notice of termination." Ex. P-1 and P-4 at ¶ 9.4.

51.  Each Franchise Agreement states: "FRANCHISEE shall immediately cease to operate the Unit, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former FRANCHISEE of FRANCHISOR;."  Ex. P-1 and P-4 at ¶ 9.4.2.

52.  Defendant continues to operate both Dunkin' locations as of the date of the

hearing.

53.  Adequate Notice to Cure/Notice of Default was provided to the franchisees at 1001 East Pittsburgh Street, Greensburg, PA 15601, and 1295 S. Main Street, Greensburg, PA 15601.

B.      Legal Standard - Preliminary Injunction

Federal Rule of Civil Procedure 65(a) authorizes district courts to order injunctive relief  upon an appropriate showing.  To obtain a preliminary injunction, the moving party must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief."  Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (citing Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999)); ACLU of New Jersey v. Black Horse Pike Reg. Bd. of Educ., 84 F.3d 1471, 1477 (3d Cir. 1996).  "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'"  Kos Pharm., 369 F.3d at 708 (quoting Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994)).

C.      Discussion

1.  Likelihood of Success on the Merits

"In this Circuit, a preliminary injunction must be denied, unless the moving party can demonstrate both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted."  McCarthy v. Arnold Foods Co., Inc., 717 F. Supp. 325, 328 (E.D.

Pa. 1989) (citing <u>Morton v. Beyer</u>, 822 F.2d 364, 367 (3d Cir. 1987)).  "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, <u>by a clear showing</u>, carries the burden of persuasion."  <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (emphasis in original).  In the case at bar, Plaintiffs have included the following counts in their Verified Complaint: 1) trademark infringement; 2) unfair competition; 3) trademark dilution; and 4) breach of contract.  Yet, Plaintiffs have failed to address at least two of these counts in their Memorandum of Law in Support of Motion for Preliminary Injunction.  (Doc. No. 4-5.)  In addition, there are serious issues in this case as to whether Plaintiffs improperly terminated Defendant's Franchise Agreements in light of the extensions granted to Defendant by a collector in Dunkin's collection department, Ms. Almada.  Moreover, there is evidence in the record that Plaintiffs refused to acknowledge that such representations were even made by this collector.  Plaintiffs failed to produce Ms. Almada at the evidentiary hearing on the preliminary injunction, and failed to offer an affidavit or declaration from this critical witness.  In light of Mrs. Mehta's testimony at the evidentiary hearing regarding Ms. Almada's representations to her concerning extensions of time, and Plaintiffs' failure to contest these representations, the Court can only conclude at this point that it is unlikely that Plaintiffs will prevail on the merits of their claims.  That is, if Dunkin improperly terminated Defendant's franchise agreements, Defendant is still Plaintiffs' franchisee, and Plaintiffs can have no claims for trademark infringement, unfair competition, trademark dilution or breach of contract.

    2.  <u>Irreparable Harm to Plaintiff</u>

    Nor can Plaintiffs demonstrate irreparable harm from Defendant's conduct.  In

order to prove irreparable harm, the moving party "must 'demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.'" Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir.1994) (quoting Instant Air Freight Co. v. C.F. Air Freight Inc., 882 F.2d 797, 801 (3d Cir. 1989)).  "Economic loss does not constitute irreparable harm." Id. at 653.  "[T]he injury created by a failure to issue the requested injunction must ' "be of a peculiar nature, so that compensation in money cannot atone for it." ' " Id. (citations omitted).  "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for.'" Id. (citations omitted).  In addition, the claimed injury cannot merely be possible, speculative or remote.  "[M]ore than a risk of irreparable harm must be demonstrated.  The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat; [an injunction] may not be used simply to eliminate a possibility of a remote future injury . . ..'" Id. at 655 (citations omitted).

Upon careful review of the evidence adduced at the evidentiary hearing and the parties' submissions, the Court is not convinced that Plaintiff will suffer irreparable harm if the preliminary injunction is not granted.  Although Plaintiffs have stated that they will suffer irreparable harm if the "post-term restrictive covenant" is not enforced, there is substantial evidence in the record that Defendant was improperly terminated as a franchisee due to the extensions granted by Ms. Almada.  In fact, Defendant, who is arguably Plaintiff's franchisee, is not acting as a competitor, but continues to operate under the terms of the franchise agreement. The Plaintiffs presented no evidence that Defendant is using Plaintiffs' corporate information under a different name or competing entity, but is in fact, a valid franchisee.  Irreparable harm is unquantifiable, yet the moving party must make a "clear showing" that the threat of loss,

however, undefined, is both "immediate" and a "presently existing actual threat."  Acierno v.

New Castle County, 40 F.3d 645, 655 (3d Cir. 1994).  Plaintiff has failed to carry this heavy

burden

       3.  Balancing of the Harms

      While Plaintiffs must demonstrate the above elements of reasonable probability of

eventual success on the merits and that they will be irreparably harmed pendente lite if the

injunction is not granted, the district court "should take into account, . . . the possibility of harm

to other interested persons from the grant or denial of the injunction . . ..  In re Arthur Treacher's

Franchisee Litigation, 689 F.2d 1137, 1143 (3d Cir. 1982) (quoting Oburn v. Shapp, 521 F.2d

142, 147 (3d Cir. 1975); and citing Continental Group, Inc. v. Amoco Chem. Corp., 614 F.2d

351, 356-57 (3d Cir. 1980) (additional citations omitted)).  That is, the district court must

consider, to the extent relevant, "whether an injunction would harm the defendant more than

denying relief would harm the plaintiff . . .."  Viad Corp. v. Cordial, 299 F. Supp. 2d 466, 475-76

(W.D. Pa. 2003) (citing A.C.L.U. v. Ashcroft, 322 F.3d 240, 250 (3d Cir. 2003); Acierno, 40

F.3d at 653).

      Courts in the Third Circuit have followed the United States Court of Appeals for

the Second Circuit in finding that the termination of a long-standing employment or business

relationship can result in irreparable harm.  See Roso-Lino Beverage Distributors, Inc. v. Coca-

Cola Bottling Co., 749 F.2d 124 (2d Cir. 1984) (termination of eleven-year old distributorship

run by husband and wife constituted irreparable harm); Semmes Motors, Inc. v. Ford Motor Co.,

429 F.2d 1197 (2d Cir. 1970) (termination of twenty-year old auto dealership run by father and

recently entered by son constituted irreparable harm); followed by, McCarthy v. Arnold Foods

14

Co., Inc., 717 F. Supp. 325, 329 (E.D. Pa. 1989) (irreparable harm found in the termination of a

fourteen -year-old wholesalership); Goldhaber v. Foley, 519 F. Supp. 466 (E.D. Pa. 1981)

(removal of court reporters from established careers constituted irreparable harm).

      Here, Defendant's wife testified that she and her husband had invested twelve

years of their lives into the Dunkin' franchise, 6 years in the Pennsylvania location and 6 years in

the Tennessee location.  TR 67/16-68/12.  She testified that "[a]ll of our savings and everything

that we've earned, we've just put back into the business, so there's nothing that we have ever

known to do except this."  TR 67/20-22.  She further testified that they moved to the

Pennsylvania location, in part, "to get involved better into the system because we wanted to stay

in it.  So my husband had to move to Pittsburgh by himself while I took care of the Chattanooga

store for the company until they agreed to close it down six months later."  TR 68/6-11.

      Consequently, the Court finds that unlike Plaintiffs, Defendant will suffer

irreparable harm if the injunction should issue, thereby forcing him to close his business.  As a

result, Defendant would lose his financial investment, including those profits reinvested into the

business, and, as experienced over the last 12 years, his ability to make a living.


      D.    Conclusions of Law

      Consistent with the above findings of fact and discussion, the Court makes the

following conclusions of law:

      1.  This Court has subject matter jurisdiction over this action pursuant to §§ 34(a)

and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a), 1121 and 1125(a); and 28 U.S.C. §§ 1331,

1332(a), 1338, and 1367.

2.  Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2).

3.  Federal Rule of Civil Procedure 65(a) authorizes district courts to order injunctive relief  upon an appropriate showing.

4. To obtain a preliminary injunction, the moving party must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (citing Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999)); ACLU of New Jersey v. Black Horse Pike Reg. Bd. of Educ., 84 F.3d 1471, 1477 (3d Cir. 1996).

5.  "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" Kos Pharm., 369 F.3d at 708 (quoting Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994)).

6.  Federal law applies to determining whether injunctive relief is appropriate. Viad Corp. v. Cordial, 299 F. Supp. 2d 466, 475 (W.D. Pa. 2003) (citing Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 799 (3d Cir. 1989)) (other citation omitted).

7.  The issue of whether Vasana was a Franchisee is irrelevant to the present case because the Court finds that adequate Notice of Default/Notice to Cure was provided.

8.  Plaintiffs' Motion for Preliminary Injunction should be denied because they have failed to establish the elements necessary to entitle them to the issuance of a Preliminary Injunction.

9.  Plaintiffs' Motion for Preliminary Injunction should be denied because the

damage sustained by the Defendant will be far greater than any damage that will be sustained by Plaintiffs if their motion is not granted.

10.   Plaintiffs have engaged in conduct that is in violation of the covenant of good faith and fair dealing.  The Restatement (Second) of Contracts, § 205, expressly provides that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and in its enforcement."  The Pennsylvania Courts have repeatedly embraced this fundamental principle of the Restatement.  GNC Franchising, Inc., v. O'Brien, 443 F. Supp. 2d 737, 751-54 (W.D. Pa. 2006).  See e.g., Frickert v. Deiter Bros. Fuel Co., 347 A.2d 701, 705 (Pa. 1975); Atlantic Richfield Co. v. Razumic, 390 A.2d 736, 742 n. 7a (Pa. 1978) (referring to § 231 of Restatement (Second) Contracts Tent. Draft No.5 1970 now § 205).  See generally Bethlehem Steel Corp. v. Litton Indus. Inc., 488 A.2d 581, 600 (Pa. 1985) (per curiam) (opinion in support of reversal).

11.   Plaintiffs' Notice of Default/Notice to Cure was, at best, contradictory in that it offered an opportunity to cure, but at the same time, stated an intent to terminate.  P-2.

12.   In response to the health issues faced by the Mehta family, Ms. Almeda granted the Defendant an extension of time within which to make the payments and submit the reports that were required to bring the account into good standing.  TR. 58/24-25; 59/1-2; 62/12-13.

13.   Because Ms Almeda granted Defendant an extension of time within which to make payments, Plaintiffs' termination of Defendant's franchise agreements is improper, and therefore, the Defendant should still be considered an active franchise within the Dunkin' system.

14.  Accordingly, the Defendant did not misappropriate or misuse any of the Plaintiffs' trademarks.

15.  Plaintiffs have failed to prove that they have suffered irreparable harm as a result of Defendant's alleged late payments.

III.  <u>CONCLUSION</u>

For the reasons set forth above, it is respectfully recommended that Plaintiff's Motion for Preliminary Injunction (Doc. 4) be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates Judges, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: July 27, 2007                                By the Court:

                                                    LISA PUPO LENIHAN
                                                    United States Magistrate Judge

cc:     The Honorable Joy Flowers Conti
        United States District Judge

        All Counsel of Record
        Via Electronic Mail

18